## A.URORA COTTON MILLS
## v.
## JOSEPHINE OGERT.

*Master and Servant—Negligence of Master—Personal Injuries—Elevator—Contributory Negligence.*

In an action brought by a servant to recover for personal injuries alleged to have been suffered through the negligence of her employer with regard to that portion of his premises in connection with an elevator, this court holds that there was no act of negligence, as charged in the declaration, proven against the defendant; that the great preponderance of the evidence shows the plaintiff to have been grossly negligent upon the occasion of the injury, and holds that the judgment for the plaintiff can not stand.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. A. J. HOPKINS, N. J. ALDRICH and F. H. THATCHER, for appellant.

Messrs. ALSCHULER & MURPHY and J. A. RUSSELL, for appellee.

LACEY, P. J.   This was an action brought by appellee against appellant for injuries received through falling down an elevator in the cotton mill of the appellant, where she was

working as a servant, and where she received injuries by having both arms broken, and in which suit she recovered $1,000 in the court below.

The declaration charges that in January, 1889, the appellant was the owner of the cotton mill buildings and premises, known as "The Aurora Cotton Mills," which were then used and operated by the defendant in the manufacture of cotton goods, and in which building it had constructed and was then and there operating, a certain elevator for the purpose of conveying freight and persons to and between the various floors or stories of said building, through the holes or openings made in such floors for such purpose.

The negligence charged in the declaration is, that the appellant wrongfully and negligently suffered the said holes or openings in said floors to be covered by trap doors, which were negligently and improperly constructed by defendant, so as to be operated and opened automatically and by machinery, to allow said elevator to pass through said floors, and that the defendant wrongfully and negligently failed or omitted to protect such elevator ways or openings or trap doors, so as to prevent and warn persons, ignorant of the existence of such trap doors, from going thereon, the appellant having negligently and improperly constructed the said trap doors so that they appeared to be a part of the said floors, and that the appellant negligently omitted to warn appellee, an employe of the appellant, in the capacity of a cleaner and sweeper or scrub woman, and who had been in such employment for four days, of the existence of the elevator or of such openings or trap doors in the floors, the appellee having no knowledge of their existence. It is further charged as an act of negligence, that the appellant failed to give any warning that the elevator was descending and that such trap doors would be opened. As a consequence it is charged, that while the appellee, by order of appellant, was sweeping and cleaning one of the floors about the place where such opening or trap door was situated, and while she was in the exercise of ordinary care, the elevator descended and struck the plaintiff, and the said trap

doors were opened by the appellant and the plaintiff was precipitated through such trap doors and such openings in said floors to and upon the basement of said building, a distance of twenty feet, whereby her face and head were severely cut and bruised and both arms were broken, etc. Whereby the damages complained of were sustained.

After a careful perusal of the evidence in the case, we are of the opinion that there was no negligence on the part of appellant, as the evidence clearly shows that the elevator, with its automatic hatch doors, constructed and used in the manner in which it was when appellee was injured, was one of the safest and best as against accidents to employes, and that they were in general use, and that there were some 3,000 of them in use in various mills and factories in the country. This was all the care the law required the appellants to exercise in the construction of its elevator machinery.

We think the evidence also fails to show that the appellee went onto the elevator, as charged in the declaration, and it equally shows that she fell off the main floor while she was sweeping. We think the evidence fails entirely to show that the appellee exercised ordinary care in not discovering the elevator, if she did not discover it.

She had been accustomed before that time to work in similar buildings where such elevators were in operation; she had worked in a cotton factory at Ticonderoga, a four story building, where elevators were in use. The appellee can give no account of how she got upon the elevator, but in some way, on the fourth day that she had been there, she fell from the first floor to the basement through the elevator. It was no part of her duty to sweep the elevator. It was her duty to sweep the passageway between the wing and the main building and stairs which led to the floor above and below and which is just at the left of the passageway going into the wing building.

Miss Moreau, an employe of the appellant, by order of appellant, went with appellee, as she testifies, and showed her the passageway and the stairs and where to sweep, and

then stood nearly in front of the elevator and showed her the elevator going up and down and instructed her in French, as that was the language she understood, not to go near the elevator or to have anything to do with it. The appellee then answered and said, " I understand."

Miss Moreau also testified that it was as light in the elevator as it was in the court room where the case was tried. Miss Moreau also testified that she told appellee that there was a boy named John Barie whose duty it was to look after the elevator, who would look after it if anything got on it, and take care of it. Miss Moreau also testifies that one day when the appellee was sweeping in the hall the elevator was going up and down and she stood looking at it with the broom in her hand. The witness was in plain view of the elevator and was standing between it and the office door.

It is true appellee denies Miss Moreau showed her the elevator or that she could understand Miss Moreau or that Miss Moreau understood French or that she visited the family of Miss Moreau before she went to work. We are of the opinion very little credit can be given to this testimony of the appellee; for, besides the testimony of Miss Moreau, Peter Moreau, her father, testified that he and his wife were Canadian French and spoke that language in their family except when some one in the house was speaking English; the general conversation between him and his wife was in French; and that the appellee would come over to their house after supper in the summertime and that they would sit on the stoop and talk about the old country, and that she understood them perfectly and they understood her, and that his daughter was quite as liberal in the French language as he was and that he always spoke French to her. The appellee and his daughter understood each other perfectly.

Under these circumstances, very little credit ought to be given to the denial of the appellee, and therefore, having been informed of the elevator and knowing all about it, and having been told not to go into it, it was a great act of

negligence on her part to go onto it, or to go so near to it that she would be in danger.

We can not but believe that there was no act of negligence, as charged in the declaration, proven against the appellant. But on the other hand the great preponderance of the evidence shows that appellee was grossly negligent.

For the reasons above set forth the judgment of the court below is reversed and the cause remanded.

                                    *Reversed and remanded.*